Grant L. Cartwright, Esq. (AZ Bar No. 030780)
Andrew A. Harnisch, Esq. (AZ Bar No. 024957)
**MAY, POTENZA, BARAN & GILLESPIE, P.C.**
201 N. Central Avenue, Suite 2200
Phoenix, AZ 85004-0608
Telephone: (602) 252-1900
Facsimile: (602) 252-1114
E-mail: gcartwright@maypotenza.com
aharnisch@maypotenza.com

*Proposed Counsel for Debtor*

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | Chapter 11 Proceeding |
| ARCTIC CATERING, INC. | Case No. 2:18-bk-13118-EPB |
| Debtors. | **EMERGENCY MOTION FOR ORDER AUTHORIZING PAYMENT OF PRE-PETITION WAGES, SALARIES, EMPLOYEE BENEFITS, AND RELATED ITEMS**<br><br>**Hearing Date: October 29, 2018**<br>**Hearing Time: 2:30 p.m.**<br>**Courtroom: 601**<br>**Location: 230 N 1st Ave, Phoenix, AZ 85003** |

Arctic Catering, Inc., debtor and debtor-in-possession (the "**Debtor**") in the above-referenced chapter 11 case (the "**Bankruptcy Case**") respectfully submits this motion (the "**Wages Motion**"), under Sections[1] 105(a), 363, 507(a)(4), 541(b)(7), and 541(d) of the Bankruptcy Code, Bankruptcy Rules[2] 6003 and 6004, and Local Rule[3] 4001-4(b), and requests this Court enter an order authorizing payment (i) of pre-petition wages, salaries, overtime pay (the "**Wages**"), as well as payments deducted from Employees' paychecks

---

[1] As used herein, "**Section**" refers to a section of title 11 of chapter 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "**Bankruptcy Code**").

[2] As used herein, "**Bankruptcy Rule**" refers to a rule of the Federal Rules of Bankruptcy Procedure, Bankruptcy Rules 1001-9037.

[3] As used herein, "**Local Rule**" refers to a rule of the Local Rules of Bankruptcy Procedure for the District of Arizona.

(the "**Deductions**") on account of Employees' benefit programs, and withholdings from the Employees' paychecks on account of various federal, state or local income, FICA, Medicare, state disability, worker's compensation and other taxes for remittance to the appropriate federal, state or local taxing authority (collectively the "**Withholdings**," and together with the Wages, and Deductions, the "**Prepetition Compensation**"); (ii) prepetition contributions to, and benefits under, employee benefit plans (collectively, the "**Prepetition Benefits**"); and (iii) granting other related relief.

**Pursuant to Local Rule 4001-4(b)(7), the Debtor requests payment of Wages for its President and Chief Executive Officer in the amount of $8,571.43**.

The Debtor requests emergency approval of this Motion because the Debtor's reorganization efforts risk serious disruption without sustaining the work efforts of the Debtor's Employees. Put simply, the Debtor wants to make sure its Employees are working hard and are able to concentrate on the job at hand rather than worrying about getting paid during this chapter 11 case.

The Wages Motion is further supported by the (1) *Declaration of David Gonzales in Support of First-Day Pleadings* (the "**Gonzales Declaration**") filed contemporaneously herewith; (2) the following Memorandum of Points and Authorities; (3) the documents referenced herein; and (4) the entire record before the Court in this case. In support hereof, the Debtor respectfully states as follows:

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334, and the standing order of reference signed by Chief Judge Stephen M. McNamee dated June 29, 2001, which order, among other things, refers bankruptcy cases to the bankruptcy judges for the District of Arizona.

2. This matter constitutes a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

3. Venue is proper under 28 U.S.C. §§ 1408 and 1409.

## II. FACTUAL BACKGROUND

### A. The Debtor's Business and the Chapter 11 Filing

4. The Debtor, an Alaska corporation, was founded in 1973.

5. The Debtor is headquartered at 7373 E Doubletree Road, Suite 135, Scottsdale 85258.

6. The President and Chief Executive Officer is David Gonzales.

7. The Debtor is a catering and support services company. Its main lines of business are logistics support, food services, and facility management for employees at remote camp and lodging centers of oil and gas companies around the country, with a primary focus on the Northwest Alaskan frontier. The Debtor also designs remote camps and related operations from the ground up.

8. In 2018, the Debtor has generated approximately $16,679,234 in revenue to date.

9. Since the commencement of the Bankruptcy Case, the Debtor has continued in possession of its property and is operating and managing its business as debtor-in-possession pursuant to Sections 1107(a) and 1108.

10. Additional information regarding the circumstances leading to the commencement of this case and information relating to the Debtor's business is set forth in detail in the Gonzales Declaration filed contemporaneously herewith.

### B. The Prepetition Compensation and Prepetition Benefits Owed to Employees

11. As of the Petition Date, the Debtor has 187 employees (the "**Employees**"). A list of the Employees is attached as **Exhibit A**.

12. The Debtor's payroll is approximately $220,000 per week. The Debtor pays payroll on Wednesday each week for the previous week.

13. All of the Employees are owed or have accrued various sums of Prepetition Compensation. The Prepetition Compensation remains unpaid on the Petition Date because, among other things, (1) the Debtor commenced its Bankruptcy Case in the midst

of its customary payroll period, and (2) checks previously issued on account of Prepetition Benefits obligations may not have been presented for payment, or may not have cleared the banking system. Regarding the former, Wages for the period of 10/21/18 – 10/25/18 constitute Prepetition Compensation scheduled to be paid on 10/31/18.

14. The Debtor estimates that the total amount of unpaid Prepetition Compensation for Employees was no more than $139,139.57[4], comprised of $125,714.29 in pre-petition wages for 10/21/18 – 10/25/18, $6,235.91 in manual payroll checks yet to be cashed, $6,452.05 in manual 401k funding, and $767.32 in HSA funding.

15. The Debtor also owes certain of its Employees reimbursable expenses in the amount of $6,917.14 (the "**Expenses**"), as set forth in detail in **Exhibit B**.

### C. Prepetition Benefits

16. The Prepetition Benefits relate to the Debtor's employee benefit programs, including: (i) plans maintained by the Debtor that provide medical, dental, vision, prescription drug, life, accident and disability insurance; and (ii) a 401(k) retirement plan for its Employees (collectively, the "**Benefit Programs**").

17. Certain Prepetition Benefits were owed but remained unpaid as of the Petition Date because various obligations under the Benefit Programs accrued either in whole or in part prior to the Petition Date. The total amount for unpaid Prepetition Benefits is less than $5,000.00. The Debtor seeks authorization to pay all Prepetition Benefits that, as of the Petition Date, had accrued but remained unpaid.

## III. LEGAL GROUNDS FOR RELIEF REQUESTED

The payment of the Prepetition Compensation, Prepetition Benefits is warranted under Sections 105(a), 363, 507(a)(4), 507(a)(5), 541(b)(7) and 541(d), and by decisions from courts around the country.

### A. Employee Wages and Benefits Enjoy Priority Status under the Bankruptcy Code

---

[4] This amount includes the prepetition Wages sought for the Debtor's President and Chief Executive Officer.

Under Section 507(a)(4), employees receive a priority claim for:

> allowed unsecured claims, but only to the extent of $12,850 for each individual or corporation, as the case may be, earned within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first, for —
>
> (A) wages, salaries, or commissions, including vacation, severance, and sick leave pay earned by an individual; or
> (B) sales commissions earned by an individual or by a corporation with only 1 employee, acting as an independent contractor in the sale of goods or services for the debtor in the ordinary course of the debtor's business if, and only if, during the 12 months preceding that date, at least 75 percent of the amount that the individual or corporation earned by acting as an independent contractor in the sale of goods or services was earned from the debtor . . . .

11 U.S.C. § 507(a)(4). In addition, under Section 507(a)(5), employees are granted a priority claim for:

> allowed unsecured claims for contributions to an employee benefit plan —
>
> (A) arising from services rendered within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first; but only
>
> (B) for each such plan, to the extent of —
>
> (i) the number of employees covered by each such plan multiplied by $12,850; less
>
> (ii) the aggregate amount paid to such employees under paragraph (4) of this subsection, plus the aggregate amount paid by the estate on behalf of such employees to any other employee benefit plan.

11 U.S.C. § 507(a)(5).

Here, the Debtor the net amount of Prepetition Compensation, Expenses, and Prepetition Benefits owing to or on account of its employees does not exceed the sum of $12,850 per employee, allowable as a priority claim under Sections 507(a)(4) and 507(a)(5). Therefore, authorizing the Debtor to pay these amounts would not deplete

funds that would otherwise be available to other unsecured creditors under a chapter 11 plan.

### B. Funds Held in Trust Are Not Available for General Distribution to Creditors

Section 541(d) of the Bankruptcy Code provides that "property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest" becomes property of a debtor's estate only to the extent of the debtor's legal title therein. 11 U.S.C. § 541(d). It is well established that property a debtor holds in trust for another is not property of the estate within the meaning of Section 541. *See Advent Mgmt. Corp. v. Taylor Assocs.* (*In re Advent Mngmt. Corp.*), 104 F.3d 293, 295 (9th Cir. 1997); *see also Mitsui Mfrs. Bank v. Unicom Computer Corp.* (*In re Unicom Computer Corp.*), 13 F.3d 321, 324 (9th Cir. 1994) (finding that funds that would be subject to a constructive trust are not property of the estate under section 541(d)).

More specifically, it is well established under Section 541(d) that taxes collected on behalf of taxing authorities are not property of the estate. *See Begier v. IRS*, 496 U.S. 53, 59 (1990) (holding that taxes such as excise taxes, FICA taxes and withholding taxes are property held by the debtor in trust for another and, as such, do not constitute property of the estate); *see also Texas Comptroller of Pub. Accounts v. Megafoods Stores, Inc.* (*In re Megafoods Stores, Inc.*), 163 F.3d 1063 (9th Cir. 1998) (finding that a debtor holds only legal title in certain sales tax, and not an equitable interest, thus not property of bankruptcy estate); *City of Farrell v. Sharon Steel Corp.* (*In re Sharon Steel Corp.*), 41 F.3d 92, 98-103 (3d Cir. 1994) (finding that funds withheld from employees' paychecks may be subject to a trust, and thus are not property of a debtor's estate, even where such funds were commingled with the debtor's other property). Accordingly, such funds are not available for general distribution to a debtor's creditors.

The Withholdings are held in trust for the benefit of the appropriate federal, state or local taxing authorities. Likewise, certain of the Deductions also are held in trust for, among others, the Debtor's employees themselves. Thus, the Withholdings and

Deductions likely are not property of the Debtor's estate within the meaning of Section 541. As a result, the remittance of the Withholdings and Deductions is warranted because it will not adversely affect the Debtor's estate or its creditors.

Further, many federal, state and local taxing authorities impose personal liability on the officers and directors of entities responsible for collecting taxes from employees to the extent any such taxes are collected but not remitted. Accordingly, if these amounts remain unpaid, there is a risk that the Debtor's officers and directors may be subject to lawsuits on account of any such nonpayment during the pendency of this Bankruptcy Case. Such lawsuits obviously would constitute a significant distraction for officers and directors at a time when they should be focused on the Debtor's efforts to (i) stabilize their post-petition business operations and (ii) develop and implement a successful bankruptcy strategy. To avoid the serious disruption of the Debtor's bankruptcy-related efforts that could result from the nonpayment of any withholding taxes, the Debtor seeks authority to remit all Withholdings collected on behalf of the employees, including prepetition Withholdings, to the applicable taxing authorities to the extent that that they have not already been remitted.

**C. The Doctrine of Necessity Provides a Further Basis for Granting the Requested Relief**

Section 363(b)(1) provides that "[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Section 105(a) provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent the abuse of process.

11 U.S.C. § 105(a). Section 105(a) grants bankruptcy courts broad authority and discretion to enforce the provisions of the Bankruptcy Code under equitable common law principles.

Courts have long recognized the existence of the judicial power to authorize a debtor to pay prepetition claims where such payment is essential to the continued operations of the debtor. *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 176 (Bankr. S.D. N.Y. 1989); *see also In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191-92 (Bankr. D. Del. 1994) (finding that a debtor is entitled to pay certain prepetition creditors upon a showing that the payment is "essential to the continued operation of the business") (citations omitted. The United States Supreme Court first articulated the equitable common law principle commonly referred to as the "doctrine of necessity" over 125 years ago in *Miltenberger v. Logansport, C. & S.W.R. Co.*, 106 U.S. 286, 1 S. Ct. 140, 27 L. Ed. 117 (1882).

The bankruptcy court's exercise of its authority under the "doctrine of necessity" is appropriate to carry out specific statutory provisions of chapter 11, specifically Sections 1107(a), 1108 and 363(b)(1), which collectively authorize a debtor in possession to maintain and operate the debtor's business and use estate property outside of the ordinary course of business. Indeed, a debtor in possession operating a business under Section 1108 of has a duty to protect and preserve the value of its business, and prepetition claims may be paid if necessary to perform the debtor's duty. *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) ("There are occasions when this duty can only be fulfilled by the preplan satisfaction of a prepetition claim.").

The Wages Motion satisfies the foregoing criteria, as the relief sought herein plainly is essential to the continued operation of the Debtor. The immediate impairment of the Debtor's relationships with their employees and the irreparable harm to workforce morale sure to attend any delay or disruption in the payments and benefits provided to employees — at the very time when the dedication, confidence and cooperation of those

employees is most critical — will have an immediate harmful impact on the Debtor's operations and the going concern value of the estates.

Maintaining the goodwill of the Debtor's employees and ensuring the availability throughout the duration of this Bankruptcy Case will (i) assist the Debtor in maintaining the necessary work atmosphere that the employees were used to pre-petition, and, in turn, protect the going concern value of the estate and maximize the value ultimately available to creditors and (ii) preserve the Debtor's relationships with customers and vendors that will continue to provide value in connection with any going concern sale of the Debtor's assets.

Furthermore, any harm resulting from the Debtor's failure to obtain the relief requested herein would not be limited to the Debtor's estates. Because the amounts represented by Prepetition Compensation, and Prepetition Benefits are needed to enable the Debtor's employees to meet their own personal obligations, they would suffer economic hardship and, in many instances, serious financial difficulties if the relief requested herein is not granted.

In light of the foregoing, the Debtor respectfully submits that the payment of the employee-related obligations, including the Expenses, as requested herein is (i) in the best interests of the Debtor, its estate and its creditors and (ii) necessary to prevent immediate and irreparable harm to the Debtor, its estate and their employees.

Bankruptcy Courts in this district have routinely approved the payment of prepetition claims of employee wages, salaries, expenses and benefits in various chapter 11 cases. *See, e.g.*, *In re Prime Time Int'l Co.*, Case No. 14-03518 [DE 56] (MCW); *In re PRM Family Holding Co.*, Case No. 13-09026 [DE 31] (SSC); *In re Basha's Inc.*, Case No. 09-16050 [DE 52] (JMM); *In re Apache Junction Hosp., LLC d/b/a Arizona Regional Med. Ctr.*, Case No. 13-18188 [DE. 42] (SHG).

/ / /

/ / /

### D.  The Debtor Requests Immediate Relief and Waiver of Stay

Under Bankruptcy Rules 6003(b) and 6004(h), the Debtor seeks (i) immediate entry of an order granting the relief sought herein and (ii) a waiver of any stay of the effectiveness of such an order.  Bankruptcy Rule 6003(b) provides, in pertinent part, that "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, grant relief regarding . . . a motion to pay all or part of a claim that arose before the filing of the petition."  FED. R. BANKR. P. 6003(b).  Consequently, where the failure to grant any such requested relief would result in immediate and irreparable harm to the Debtor's estate, the Court may allow the Debtor to pay all or part of a claim that arose before the Petition Date prior to the twenty-first day following the Petition Date. Bankruptcy Rule 6004(h) provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  FED. R. BANKR. P. 6004(h).

As set forth above and in the Gonzales Declaration, the payment of the Prepetition Compensation and Prepetition Benefits is necessary to prevent the immediate and irreparable damage to the Debtor's (i) operations and (ii) going-concern value that would result from a collapse of Employee morale.  The Debtor therefore submits that ample cause exists to justify (i) the immediate entry of an order granting the relief sought herein and (ii) a waiver of the fourteen-day stay imposed by Bankruptcy Rule 6004(h), to the extent that it applies.

## IV.  CONCLUSION

WHEREFORE, the Debtor respectfully requests that the Court enter an order granting the relief sought herein; and granting the Debtor such other and further relief as the Court may deem proper.

/ / /

/ / /

RESPECTFULLY SUBMITTED this 26th day of October, 2018.

**MAY, POTENZA, BARAN & GILLESPIE, P,C.**

By  *s/ Grant L. Cartwright*
Grant L. Cartwright
Andrew A. Harnisch
*Proposed Counsel for Debtor*

COPY of the foregoing mailed or emailed*
on October 26th, 2018, to:

*Liquid Capital Corp
Attn: Tammy Kemp, VP
5734 Yonge St Suite 400
Toronto, ON M2M 4E7
tkemp@liquidcapitalcorp.com

U.S. Trustee
Office of the U.S. Trustee
230 North First Avenue, Suite 204
Phoenix, Arizona 85003

Food Services of America
P.O. Box 196073
Anchorage, AK, 99519

Fairchild Freight LLC
5323 N. 99th Avenue Suite# 155
Glendale, AZ, 85305

BDO
PO BOX 677973
Dallas, TX, 75267-7973

Com Quest
8050 Resurrection Drive
Anchorage, AK, 99504-4731

Veritiv Operating Company P.O. Box 57006
Los Angeles, CA, 90074-7006

Personnel Plus
20 South Central Avenue
Baltimore, MD, 21202

Charlie's Produce
PO Box 24606
Seattle, WA, 98124-0606

Country Foods
140 S Willow Street
Kenai, AK, 99611

Beacon OHSS
Lb#631101
P.O. Box 3852
Seattle, WA, 981243852

Jermain Dunnagan & Owens, P.C. 3000 A Street Suite 300
Anchorage, AK, 99503-4097

Gordon Food Service
PO BOX 88029
Chicago, IL, 60680-1029

| | |
|---|---|
| The Ultimate Software Group<br>PO Box 930953<br>Atlanta, GA, 31193-0953<br><br>Premera Blue Cross Blue Shield Of Alaska<br>P.O. Box 91060<br>ATTENTION: PAYMENT PROCESSING Seattle, WA, 98111<br><br>Frontier Paper WCP<br>P.O. Box 84145<br>Seattle, WA, 98124-5445<br><br>V.F. Grace, Inc.<br>P.O. Box 200728<br>Anchorage, AK, 99520-0728<br><br>Arctic Edge Services<br>13301 Messinia St<br>Anchorage, AK, 99516<br><br>Stallion Rockies, Ltd.<br>P.O. Box 842364<br>Dallas, TX, 75284-2364 | *Michael R. King, Esq.<br>*Kevin J. Blakley, Esq.<br>*Trinity Osborne, Esq.<br>Gammage & Burnham, PLC<br>2 North Central Ave., 15th Floor<br>Phoenix, Arizona 85004<br>mking@gblaw.com<br>KBlakley@gblaw.com<br>tosborne@gblaw.com<br>*Attorneys for Food Services of America* |

Michelle Nicole Collins
HC02 Box 132
Gakona, AK, 99586

Alaska Communications Systems P.O. Box 196666
Anchorage, AK, 99519-6666

Colonial Life
Processing Center
P.O. Box 1365
Columbia, SC, 29202-1365

12