Grant L. Cartwright, Esq. (AZ Bar No. 030780)
Andrew A. Harnisch, Esq. (AZ Bar No. 024957)
**MAY, POTENZA, BARAN & GILLESPIE, P.C.**
201 N. Central Avenue, Suite 2200
Phoenix, AZ  85004-0608
Telephone:  (602) 252-1900
Facsimile:  (602) 252-1114
E-mail:  gcartwright@maypotenza.com
 aharnisch@maypotenza.com
*Counsel for Debtor*

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>ARCTIC CATERING, INC.<br><br>                Debtor. | Chapter 11 Proceeding<br><br>Case No. 2:18-bk-13118-EPB<br><br>**MOTION TO APPROVE SETTLEMENT BETWEEN DEBTOR AND PJK FOOD SERVICE, LLC D/B/A KEANY PRODUCE & GOURMET** |

Arctic Catering, Inc. (the "**Debtor**") moves this Court for an order under Bankruptcy Rule[1] 9019 approving a settlement with PJK Food Service, LLC d/b/a Keany Produce & Gourmet ("**Keany Produce**," and collectively with the Debtor, the "**Parties**") relating to the *PACA Claim of PJK Food Service, LLC d/b/a Keany Produce & Gourmet* (the "**PACA Claim**") [DE 105]. The Debtor is contemporaneously filing a request for expedited consideration of this Motion.

In support of this Motion, the Debtor submits the following Memorandum of Points and Authorities, the documents referenced herein, and the entire record before the Court in this case.

*[Remainder of Page Intentionally Left Blank]*

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334, and the standing order of reference signed by Chief Judge Stephen M. McNamee dated June 29, 2001, which order, among other things, refers bankruptcy cases to the bankruptcy judges for the District of Arizona.

2. This matter constitutes a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A) and (B).

3. Venue is proper under 28 U.S.C. §§ 1408 and 1409.

## II. FACTUAL BACKGROUND

### A. The Debtor's Business Relationship with Keany Produce

4. The Debtor, an Alaska corporation, was founded in 1973.

5. The Debtor is a catering and support services company. Its main lines of business are logistics support, food services, and facility management for employees at remote camp and lodging centers of oil and gas companies around the country, with a primary focus on the Northwest Alaskan frontier. The Debtor also designs remote camps and related operations from the ground up.

6. Beginning several years ago and continuing post-petition, Keany Produce began supplying, and continues to supply, the Debtor with goods and produce covered by the Perishable Agricultural Commodities Act, 7 U.S.C. §§ 499a *et al.* ("**PACA**").

7. The general course of dealing was that the Debtor would place an order with Keany Produce to purchase produce, and Keany Produce would generate an invoice and send the shipment to the Debtor.

### B. The Debtor Files for Bankruptcy and Keany Produce Asserts Its PACA Claim

---

[1] As used herein, "**Bankruptcy Rule**" refers to a rule of the Federal Rules of Bankruptcy Procedure, Bankruptcy Rules 1001-9037.

8. On October 25, 2018 (the "**Petition Date**"), the Debtor voluntarily petitioned the United States Bankruptcy Court for the District of Arizona for bankruptcy relief under Chapter 11 of the Bankruptcy Code, commencing case 2:18-bk-18-13118.

9. The Debtor has continued in possession of its property and is operating and managing its business as debtor-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

10. On October 28, 2018, the Debtor filed its *Emergency Motion for Interim and Final Orders Authorizing Use of Cash Collateral, Granting Replacement Liens, and Setting Further Hearings on Use of Cash Collateral* (the "**Cash Collateral Motion**") [DE 10] requesting the interim use of cash collateral during this case, in exchange for, among other things, granting Liquid Capital Exchange, LLC ("**LCX**") a replacement lien on post-petition accounts receivable.

11. After the Debtor and LCX reached an interim agreement on cash collateral at the initial hearing on the Cash Collateral Motion on October 29, 2018, the Court entered the *Interim Order Granting Emergency Use of Cash Collateral, Granting Replacement Liens, and Setting Further Hearing on Use of Cash Collateral* [DE 27] through November 14, 2018.

12. A couple weeks later and after another cash collateral hearing, with an agreement still in place between the Debtor and LCX, on November 15, 2018, the Court entered its *Second Interim Order Granting Emergency Use of Cash Collateral, Granting Replacement Liens, and Setting Further Hearing on Use of Cash Collateral* (the "**Second Cash Collateral Motion**") [DE 49] through November 28, 2018.

13. On November 28, 2018, the Debtor and LCX stipulated to a *Third Interim Order Granting Emergency Use of Cash Collateral, Granting Replacement Liens, and Setting Further Hearing on Use of Cash Collateral* (the "**Third Cash Collateral Motion**") [DE 65], and the Court held a third hearing on cash collateral.

14. As of the date of this Motion, the Court has not granted the Third Cash Collateral Motion.

15. On November 30, 2018, the Debtor filed its *Emergency Motion to Approve Post-Petition Factoring Agreement Pursuant to 11 U.S.C. § 363 and 11 U.S.C. § 364* (the "**DIP Motion**") [DE 72].

16. The Court held a hearing on the DIP Motion on December 11, 2018.

17. The Court granted the DIP Motion, in part and with modifications, with the requirement that the Debtor set aside a reserve of funds of $160,000 to protect PACA claimants (the "**PACA Reserve**") and a reservation of rights for PACA claimants, and entered the *Interim Order Granting Emergency Motion for Order Approving Post-Petition Factoring Agreement Pursuant to 11 U.S.C. § 363 and 11 U.S.C. § 364* [DE 99] on December 20, 2018.

18. The Court also entered the *Order Setting Notice of: Bar Date for Filing Trust Claims Under the Perishable Agricultural and Commodities Act and the Packers and Stockyards Act* [DE 95], which order set January 4, 2019, as the last day for parties to file PACA trust claims (the "**PACA Bar Date**").

19. Keany Produce timely filed its PACA Claim on January 3, 2019 [DE 105].

20. The Court held a final hearing on the DIP Motion on January 10, 2019 [DE 108]. At the hearing, the Court reduced the PACA Reserve to $125,000 because only two parties filed PACA trust claims before the PACA Bar Date (including Keany Produce), and approved the DIP Motion on a final basis. The Court also set the deadline for the Debtor to object to PACA trust claims for January 18, 2019 (the "**PACA Objection Deadline**").

### III. Agreement Between the Parties

21. Effective upon entry of an order approving this Motion, the Parties stipulate and agree (the "**Agreement**") to resolve the PACA Claim and the Debtor's asserted defenses thereto pursuant to the following terms:

    i. Keany Produce shall be allowed its PACA Claim in the amount of $10,626.72 (the "**Allowed PACA Claim**"). The PACA Claim is undisputed, non-contingent, and liquidated.

ii. The Debtor shall make the first settlement payment on account of the Allowed PACA Claim in the amount of $3,542.24 to Keany Produce (the "**First Settlement Payment**") by wire pursuant to the wire transfer instructions contemporaneously provided by Keany Produce to the Debtor. The First Settlement Payment shall be made by or before ten days after the Bankruptcy Court enters an order granting this Motion.

iii. Beginning 30 days after the date the Debtor makes the First Settlement Payment, the Debtor shall make payments in the amount of $3,542.24 every 30 days thereafter for a total of two payments to Keany Produce using the same payment method used to make the First Settlement Payment (the "**Two Settlement Payments**"). After Keany Produce receives the First Settlement Payment and the subsequent Two Settlement Payments, the Debtor will have paid the down the entire Allowed PACA Claim in full satisfaction of Keany Produce's Allowed PACA Claim.

iv. Keany Produce agrees that any remaining PACA Reserve at the time the Court enters an order granting this Motion can be released to the Debtor following receipt of the First Settlement Payment.

v. Nothing herein, including the installment nature of the payments agreed to herein, shall be deemed, interpreted or otherwise construed as an extension of credit by the Keany Produce to Debtor, or as a waiver of Keany Produce's rights under the statutory trust provision of the PACA. Keany Produce's rights hereunder are in addition to its rights under the PACA trust provision and Keany Produce reserves all rights arising under the PACA trust.

vi. This Agreement constitutes the entire understanding between the Parties with respect to the subject matter hereof and supersedes all

| | | |
|---|---|---|
| 1 | | negotiations, prior discussions, and prior agreements and |
| 2 | | understandings relating to such subject matter. |
| 3 | vii. | This Agreement is entered into between the Parties as a compromise |
| 4 | | of claims disputed and is executed solely for the purpose of avoiding |
| 5 | | the cost, burden, and uncertainty of litigation.  None of the Parties, by |
| 6 | | entering into this Agreement, admits lack of merit to their respective |
| 7 | | positions or merit of opposing positions. |
| 8 | viii. | The Parties acknowledge that they have entered into this Agreement |
| 9 | | in reliance on their own independent investigations and analysis of |
| 10 | | the facts and law governing the PACA Claim, and that no |
| 11 | | representations, warranties, or promises of any kind have been made, |
| 12 | | directly or indirectly, to induce any of them to enter into this |
| 13 | | Agreement, other than those expressly stated herein. |
| 14 | ix. | The Parties acknowledge that each has had the opportunity to review |
| 15 | | the Agreement and confer with counsel, and fully understand and |
| 16 | | voluntarily accept the terms of the Agreement. |
| 17 | x. | If any term, covenant, condition, or provision of the Agreement is |
| 18 | | illegal or invalid or unenforceable for any reason whatsoever, such |
| 19 | | illegality or invalidity or unenforceability shall not affect the legality, |
| 20 | | validity, or enforceability of the remaining parts of the Agreement. |
| 21 | xi. | The signatories hereto represent and warrant that they have the |
| 22 | | authority to execute this Agreement for and on behalf of the Parties, |
| 23 | | that they have not assigned, conveyed, or otherwise transferred those |
| 24 | | claims or causes of action released herein, and that the Parties own all |
| 25 | | claims and defenses they purport to release herein. |
| 26 | xii. | This Agreement does not modify, invalidate, or supersede the existing |
| 27 | | contract between the Parties, unless otherwise stated herein. |
| 28 | | |

|   |   |   |
|---|---|---|
| 1 | xiii. | This Court shall retain jurisdiction in the event of dispute concerning |
| 2 |  | the Agreement. |
| 3 | xiv. | This Agreement is expressly contingent upon entry of a Court order |
| 4 |  | approving the terms set forth herein. |

### IV. Relief Requested

By this Motion, the Parties request that the Court enter an order under Bankruptcy Rule 9019 approving the settlement reached herein resolving the PACA Claim.

### V. Legal Basis for Relief Requested

"On motion by the [debtor] and after notice and a hearing, the court may approve a compromise or settlement." FED. R. BANKR. P. 9019(a). "The bankruptcy court has great latitude in approving compromise agreements" that are fair and equitable. *In re Woodson*, 839 F.2d 610, 620 (9th Cir. 1988). "The law favors compromise and not litigation for its own sake[.]" *In re A & C Props.*, 784 F.2d 1377, 1381 (9th Cir. 1986).

The Court of Appeals for the Ninth Circuit has identified the following factors for consideration in determining whether a proposed settlement is fair and equitable: "(a) the probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience, and delay necessarily attending it; and (d) the paramount interests of the creditors and a proper deference to their reasonable views in the premises." *In re Woodson*, 839 F.2d at 620 (citations omitted).

A settlement need not serve, or even touch upon, each of the aforementioned factors in order to be approved, "provided that the factors as a whole favor approving the settlement." *In re Pacific Gas & Electric Co.*, 304 B.R. 395, 417 (N.D. Cal. 2004). The responsibility of the bankruptcy judge is to canvass the issues to determine whether the settlement falls below the lowest point in the range of reasonableness, not to decide the numerous questions of law and fact that may be raised regarding the settlement. *Id.* (quoting *In re Drexel Burnham Lambert Grp., Inc.*, 134 B.R. 493, 496-97 (Bankr. S.D. N.Y. 1991)). While the Court should consider "the reasonable views of creditors,

objections do not rule. It is well established that compromises are favored in bankruptcy." *In re Lee Way Holding, Co.*, 120 B.R. 881, 891 (Bankr. S.D. Ohio 1990).

The Agreement is fair, equitable, and beneficial to the Debtor's bankruptcy estate and its creditors and should be approved by the Court. The Agreement has been reached by mutual consent of the Debtor and Keany Produce, and will resolve the PACA Claim, thereby avoiding the need for costly, burdensome, and unpredictable claims litigation. The settlement also will not have any significant adverse impact on the Debtor's bankruptcy estate or its other creditors. If anything, the Agreement immediately benefits the estate because it will allow the Debtor to put to use the remaining funds in the PACA Reserve after Keany Produce receives its initial $3,000.00 First Settlement Payment. The Debtor believes the Agreement is in the best interests of the estate.

WHEREFORE, the Debtor respectfully requests that this Court, on an expedited basis: (1) enter an order approving the Motion, and (2) grant the Debtor such other and further relief as is just and proper.

RESPECTFULLY SUBMITTED February 5th, 2019.

**MAY, POTENZA, BARAN & GILLESPIE, P.C.**

By *s/ Grant L. Cartwright*
    Grant L. Cartwright
    Andrew A. Harnisch
    *Counsel for Debtor*

**Approved as to Form and Content:**

By: /s/Jody A. Corrales
Jody A. Corrales
**DECONCINI MCDONALD YETWIN & LACY, P.C.**
*Counsel for PJK Food Service, LLC d/b/a Keany Produce & Gourmet*

COPY of the foregoing mailed or emailed*
on February 5th, 2019, to:

Carolyn J. Johnsen*
DICKINSON WRIGHT PLLC
1850 N. Central Avenue, Suite 1400
Phoenix, AZ 85004
cjjohnsen@dickinsonwright.com
*Attorneys for Liquid Capital Exchange, Inc.*

Michael R. King*
Kevin J. Blakley*
Gammage & Burnham P.L.C.
Two North Central Avenue, 15th Floor
Phoenix, Arizona 85004
mking@gblaw.com
kblakley@gblaw.com
*Attorneys for Food Services of America, Inc.*

Larry Watson*
Office of the U.S. Trustee
230 North First Avenue, Suite 204
Phoenix, Arizona 85003
Larry.Watson@usdoj.gov

Steven N. Berger*
ENGELMAN BERGER, P.C.
3636 North Central Avenue, Suite 700
Phoenix, Arizona 85012
snb@eblawyers.com
*Attorneys for Equity Holders*

Scott P. Vaughn*
McGuire Woods LLP
201 N. Tryon Street, Suite 3000
Charlotte, NC 28202
svaughn@mcguirewoods.com

Carl Doré, Jr.*
Doré Law Group, P.C.
17171 Park Row, Suite 160
Houston, Texas 77084
carl@dorelawgroup.net
*Attorneys for Stallion Rockies, Ltd.*

Case 2:18-bk-13118-EPB    Doc 126    Filed 02/05/19    Entered 02/05/19 13:28:36    Desc
Main Document    Page 9 of 10

Jody Corrales*
DeConcini McDonald Yetwin & Lacy, P.C.
2525 E. Broadway Blvd., Ste. 200
Tucson, AZ 85716
jcorrales@dmyl.com
Attorneys for PJK Food Service LLC
d/b/a Keany Produce & Gourment

Steven D. Jerome*
Emily Gildar Wagner*
Snell &Wilmer, LLP
One Arizona Center
400 E. Van Buren St., Ste. 1900
Phoenix, AZ 85004-2202
sjerome@swlaw.com
ewagner@swlaw.com
*Attorneys for Triple B Corporation d/b/a Charlie's Produce*

Master Mailing Matrix

By: /s/ *Elizabeth Luna*