Grant L. Cartwright, Esq. (AZ Bar No. 030780)
Andrew A. Harnisch, Esq. (AZ Bar No. 024957
**MAY, POTENZA, BARAN & GILLESPIE, P.C.**
201 N. Central Avenue, Suite 2200
Phoenix, AZ 85004-0608
Telephone:    (602) 252-1900
Facsimile:    (602) 252-1114
E-mail:    gcartwright@maypotenza.com
        aharnisch@maypotenza.com

*Counsel for Debtor*

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | Chapter 11 Proceedings |
| ARCTIC CATERING, INC. | Case No. 2:18-bk-13118-EPB |
| Debtor. | |

## CHAPTER 11 DEBTOR'S PLAN OF REORGANIZATION DATED APRIL 23, 2019

# TABLE OF CONTENTS

**I. Introduction** ............................................................................ 3

**II.Definitions, Rules of Interpretation, and Computation of Time** ............... 3

    A.Rules of Construction................................................................3

    B.Rules of Interpretation..............................................................4

    C.Computation of Time...............................................................4

    D.Definitions............................................................................4

**III. Classification and Treatment of Claims and Interests** ........................... 11

    A. Unclassified Claims ..............................................................11

        1.Administrative Expenses           12

        2.Priority Tax Claims           13

    B. Classified Claims..................................................................13

**IV. Executory Contracts and Unexpired Leases** ................................... 16

**V. Means for Executing and Implementing the Plan** ................................ 16

    A.The ACI Plan Trust...............................................................16

    B.Means of Funding the Plan .......................................................16

    C.Causes of Action ..................................................................17

    D.Management.........................................................................18

    E.Objections to Claims and Interests ..............................................19

    F.Tax Compliance....................................................................20

    G.Vesting .............................................................................20

**VI. Distributions Under the Plan**.......................................................... 20

    A.Manner of and Distribution of Payments........................................20

    B.No Distributions to Holders of Disputed Claims................................21

    C.Post-Petition Interest, Fees, and Costs ..........................................21

**VII. Effect of Plan on Claims** ............................................................ 22

    A.Effect of Confirmation.............................................................22

    B.Plan Trustee's Authority to Compromise and Settle ............................22

    C.Right of Setoff......................................................................23

**VIII. Other Provisions** .................................................................... 23

    A.Binding Effect.......................................................................23

    B.Revocation, Withdrawal, or Non-Consummation...............................23

    C.Plan Modification..................................................................24

    D.Severability of Plan Provisions ..................................................24

    E.Plan Supplement ...................................................................25

    F.Indemnification Obligations ......................................................25

    G.Consequences of Default ..........................................................25

    H.Post-Confirmation Debtor's Action ..............................................26

    I.Non-allowance of Penalties or Fines.............................................26

    J.Post-Confirmation Employment of Professionals...............................26

    K.Payment of Statutory Fees ........................................................26

    L.Documentation of Plan Implementation.........................................27

    M.Notices..............................................................................27

    N.Terms of Injunctions or Stays ...................................................27

    O.Governing Law .....................................................................28

**IX.Retention of Jurisdiction**..............................................................28

**X.Request for Confirmation and Recommendation** ........................................ 30

2

## I. INTRODUCTION

Arctic Catering, Inc., the Chapter 11 Debtor, proposes the following plan (the "**Plan**") for the resolution of outstanding Creditor Claims and Equity Interests. Reference is made to the Disclosure Statement served herewith for a discussion of the Debtor's history, business, property, operations, risk factors, a summary and analysis of the Plan, and other related matters. The Debtor is the proponent of the Plan within the meaning of Section 1129 of the Bankruptcy Code.

This Plan provides for payments to creditors from proceeds received from the sale of substantially all of the Debtor's assets.

All holders of Claims and Interests are encouraged to read this Plan and the Disclosure Statement in their entirety before voting to accept or reject this Plan or objecting to confirmation of this Plan. Subject to certain restrictions and requirements set forth in Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, the Debtor reserves the right to alter, amend, modify, revoke or withdraw this Plan prior to its substantial consummation.

## II. DEFINITIONS, RULES OF INTERPRETATION, AND COMPUTATION OF TIME

### A. Rules of Construction

All definitions set forth below are incorporated in the Plan for all purposes. Any term used in this Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or Bankruptcy Rules. Whenever the context requires, such terms shall include the plural and the singular.

3

## B. Rules of Interpretation

For purposes of the Plan (a) any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that it shall be substantially in such form or substantially on such terms and conditions; (b) any reference in the Plan to an existing document or exhibit filed or to be filed means such document or exhibit as it may have been or may be amended, modified, or supplemented; (c) unless otherwise specified, all references in the Plan to Articles, Appendices, Schedules, and Exhibits are references to Articles, Schedules, Appendices and Exhibits of or to the Plan; (d) the words "herein" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (e) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; and (f) the rules of construction set forth in Section 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply.

## C. Computation of Time

In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

## D. Definitions

Terms used in this Plan have the meaning specified in the Bankruptcy Code and Rules, if defined therein, unless the following definitions apply or the context clearly requires otherwise. The following terms have the following meanings whenever used in the Plan:

**1.1 ACI Plan Trust**: A trust formed by this Plan and managed by the Plan Trustee. The ACI Plan Trust's primary purpose will be to liquidate the remaining assets and claims of the Estate, and to distribute such assets in accordance with this Plan.

4

**1.2    ACI Recovery Fund**: A single fund containing the liquidated assets of the Estate after the proposed sale of substantially all of the Debtor's assets and collection of the Debtor's remaining accounts receivable, to be held in trust and distributed in accordance with this Plan.

**1.3    Administrative Expense**:  Any cost or expense of administration incurred in connection with the Debtor's Chapter 11 case, in accordance with Section 503(b), including, without limitation:

    a.    the actual, necessary costs and expenses of preserving the Debtor's estate and operating the Debtor's business (other than expenses which, by their express terms are not due or payable by the Effective Date);

    b.    the full amount of all requests for compensation for legal or other professional services or reimbursement of costs and expenses under Sections 330 and 503(b), or otherwise as allowed by the Bankruptcy Court; and

    c.    all fees and charges assessed against the Debtor's estate under 28 U.S.C. § 1930.

**1.4    Administrative Claims Bar Date**:  The date established in this Plan of Reorganization and approved by the Court by which all applications for payment of an Administrative Expense must be filed.

**1.5    Allowed**:  A claim (other than an Administrative Expense) is allowed when (a) it is scheduled by the Debtor in a fixed amount or up to a fixed amount and as undisputed and not contingent; (b) a proof of claim is filed by the Claims Bar Date and no objection is filed by the Objection Bar Date; or (c) allowed by entry of a Final Order.  As to an Administrative Expense, "Allowed" means approval by Final Order, after notice and hearing as required by the Bankruptcy Code, of an application for payment of Administrative Expense filed by the deadline established by the Court, but not including any Administrative Expenses that may have been paid previously.

5

**1.6    Ballot**:  Each of the ballot forms distributed with the Disclosure Statement to holders of Impaired Claims entitled to vote under Article II hereof in connection with the solicitation of acceptances of the Plan.

**1.7    Bankruptcy Code or Code**:   The Bankruptcy Reform Act of 1978, as amended, codified in Title 11 of the United States Code, 11 U.S.C. §§ 101-1532.

**1.8    Bankruptcy Court or Court**:   United States Bankruptcy Court for the District of Arizona, sitting in this Case, with respect to any particular proceeding arising under, in, or relating to the Debtor's cases, and any other court which may have jurisdiction over such proceeding.

**1.9    Bankruptcy Rules**:  The Rules of Practice and Procedure in Bankruptcy, the Local Rules of the United States Bankruptcy Court for the District of Arizona, and to the extent applicable, the Local Rules of the United States District Court for the District of Arizona.

**1.10    Case**:   The Debtor's Chapter 11 bankruptcy case pending before the Bankruptcy Court under the provisions of the Bankruptcy Code, and all adversary proceedings, contested matters, and other litigation arising in or related to it.

**1.11    Cash**:  Legal tender of the United States or equivalents thereof.

**1.12    Chapter 11 Case**:  The Chapter 11 Case of Arctic Catering, Inc.

**1.13    Claim**:  Any "claim" as defined by Section 101(5).

**1.14    Class**:  Any class into which Allowed Claims are classified pursuant to this Plan.

**1.15    Collateral**:   Any property or interest in property of the Debtor's estate subject to a lien to secure the payment or performance of a Claim, which lien is not invalid, unenforceable or subject to avoidance under the Bankruptcy Code or other applicable law.

**1.16    Confirmation**:  Entry by the Bankruptcy Court of the Confirmation Order.

6

**1.17  Confirmation Date**:  The date the Clerk of the Bankruptcy Court enters the Confirmation Order on the Clerk's docket sheet.

**1.18  Confirmation Hearing**:  The hearing to consider confirmation of the Plan under Section 1128 of the Bankruptcy Code.

**1.19  Confirmation Order**:  The appealable order of the Court confirming the Plan.

**1.20  Creditor**:  Any Person or entity who holds a Claim against the Debtor.

**1.21  Debtor**: Arctic Catering, Inc.

**1.22  Disclosure Statement**:  The Disclosure Statement pertaining to this Plan submitted by the Debtor to the Court for approval pursuant to Section 1125(b), including any amendments or modifications.

**1.23  Disputed Claim**:  A Claim not otherwise Allowed or paid pursuant to the Plan or an Order of the Bankruptcy Court, (a) which has been or hereafter is listed on the Schedules as unliquidated, contingent, or disputed, and which has not been resolved by written agreement of the parties or an order of the Bankruptcy Court, (b) proof of which was required to be filed by Order of the Bankruptcy Court but as to which a Proof of Claim was not timely or properly filed, (c) proof of which was timely and properly filed and which has been or hereafter is listed on the Schedules as unliquidated, disputed or contingent, (d) that is disputed in accordance with the provisions of this Plan, or (e) as to which a party in interest has interposed a timely objection or request for estimation in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any orders of the Bankruptcy Court, or is otherwise disputed by a party in interest in accordance with applicable law, which objection, request for estimation, or dispute has not been withdrawn or determined by a Final Order; provided, however, that for purposes of determining whether a particular Claim is a Disputed Claim prior to the expiration of any period of limitation fixed for the interposition of objections to the allowance of Claims, any Claim

7

that is not identified by the Debtor as an Allowed Claim shall be deemed a Disputed Claim.

**1.24  Distribution**:  The property required by the Plan and the Confirmation Order to be distributed to holders of Allowed Claims.

**1.25  Effective Date**:  The later of: (a) the date fourteen calendar days after the Confirmation Order becomes a Final Order; or (b) the business day after all prerequisites to the Effective Date have occurred.   If such date falls on a Saturday, Sunday, or legal holiday, then the Effective Date shall be the following business day.

**1.26  Estate Funds**:  The cash realized from the liquidation of the assets of the Estate which are not subject to any valid and enforceable liens and the proceeds of any collateral to the extent that such proceeds exceed all Claims secured by valid and enforceable liens on such collateral.

**1.27  Executory Contract**:  A lease or executory contract within the meaning of Section 365, including without limitation real property leases and/or personal property, but excluding any leases that would be treated as security interests under Uniform Commercial Code § 1-201(37).

**1.28  Final Order**:  An order, ruling or other judgment that: (i) is in full force and effect; (ii) is not stayed; and (iii) is no longer subject to review, reversal, modification or amendment, by appeal or writ of certiorari.

**1.29  General Administrative Claim**:  All Claims entitled to priority as expenses of administration under Sections 503 and 507(a)(1).

**1.30  General Unsecured Claim**:  A Claim against the Debtor that is not: (a) a Priority Claim, or (b) a Secured Claim.

**1.31  Impaired**:  When used with reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of Section 1124 of the Bankruptcy Code.

8

**1.32   Interest**:  (a) The legal, equitable, contractual and other rights of any person with respect to any equity securities issued by the Debtor, and (b) the legal, equitable, contractual or other rights of any person to acquire or receive any of the foregoing.

**1.33   Lien**:  A charge against or interest in property to secure payment of a debt or performance of any obligation, including without limitation a security interest, as defined in the Bankruptcy Code section 101(51), whether granted before or after the Petition Date, and including all liens created pursuant to the Bankruptcy Court's Orders.

**1.34   Litigation Claims**:  The claims, causes of action, suits, or proceedings, whether in law or in equity, whether known or unknown, that the Debtor or their estate may hold against any Person, all of which are to be transferred to the Plan Trustee pursuant to the Plan.

**1.35   Objection Bar Date**:  The date established in this Plan by which the Reorganized Debtor or any other party-in-interest may object to any Claim that has not been allowed by a Final Order of the Court.

**1.36   PACA Claims**: Claims filed under the Perishable Agricultural Commodities Act.

**1.37   Petition Date**:  October 25, 2018, the date upon which the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

**1.38   Plan**:  This Plan of Reorganization dated April 23, 2019 submitted by the Debtor, including any amendments or modifications made in accordance with the applicable provisions of the Code.

**1.39   Plan Trustee**:  The Trustee of the ACI Plan Trust.

**1.40   Priority Tax Claim**:  Any Claim for taxes entitled to priority under Section 507(a)(8).

**1.41   Professional**:  Any professional employed in the Chapter 11 Case pursuant to Sections 327 or 1103 of the Bankruptcy Code or otherwise and the professionals

seeking compensation or reimbursement of expenses in connection with the Chapter 11 Case pursuant to Section 503(b)(4) of the Bankruptcy Code.

**1.42   Property Tax Claim**:  Claim held by any governmental taxing authority secured by real or personal property of the Debtor's estate.

**1.43   Pro Rata**:  At any time, the proportion that the face amount of a Claim bears to the aggregate face amount of all Claims (including Disputed Claims) in a Class, unless the Plan provides otherwise.

**1.44   Real Property Lease**:  A lease of nonresidential real property within the meaning of Bankruptcy Code Section 365(d).

**1.45   Schedules**:  The schedules of assets and liabilities and the statements of financial affairs, if any, filed in the Bankruptcy Court by Debtor, as the case may be, as such schedules or statements may be amended or supplemented from time to time in accordance with Bankruptcy Rule 1009 or orders of the Bankruptcy Court.

**1.46   Section.**  Any section of Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*

**1.47   Secured Claim**:  A Claim, other than a Setoff Claim, that is secured by a security interest in or lien upon property, or the proceeds of the sale of such property, in which the Debtor has an interest to the extent of the value, of such interest or lien as determined by a Final Order of the Bankruptcy Court pursuant to Section 506 or as otherwise agreed upon in writing by such Debtor or the Plan Trustee and the holder of such Claim.

**1.48   Setoff Claim**:  A Claim, against the Debtor, of a holder that has a valid right of setoff with respect to such Claim, which right is enforceable under Section 553 as determined by a Final Order or as otherwise agreed in writing by the Plan Trustee, to the extent of the amount subject to such right of setoff.

**1.49   Solicitation**:  The solicitation of acceptances or rejections of the Plan pursuant to Section 1126(b).

**1.50    Unsecured Claim**:    Any Claim other than an Administrative Expense, Priority Tax Claim, or a Secured Claim.

## III.    CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

All Claims and Interests, except Administrative Expense and Priority Tax Claims, are placed into classes as set forth below.  A Claim or Interest is placed in a particular Class, only to the extent that the Claim or Interest falls within the description of that Class, and is classified in all other classes to the extent that any portion of the Claim or Interest falls within the description of such other Class.

A Claim or Interest is placed into a particular class for all purposes, including voting on this Plan, confirmation, and receiving distributions pursuant to this Plan, only to the extent that such Claim or interest is an Allowed Claim in that class, and such claim has not been paid, released, or otherwise settled prior to the Effective Date.  The establishment of particular Classes or categories of Unclassified Priority Claims does not mean or imply that there are any Allowed Claims that fall into each such Class or category, and the Plan Trustee, as the administrator of the Estate pending closing of the bankruptcy case, may later contend there are no such Allowed Claims in any given Class or category.

Although the following is not a substitute for a careful reading of the Plan, it is a general discussion of the treatment of Allowed Claims and Interests under the Plan.  Through the Plan, the Debtor intends to allow for payments to Allowed prepetition Claims based on the value received for from the Debtor's assets.

### A.    Unclassified Claims

Pursuant to Section 1123(a)(1), Administrative Expenses under Section 507(a)(2) and Priority Tax Claims under Section 507(a)(8) are not classified under the Plan.  These Claims are not considered impaired and holders of such Claims do not vote on the Plan.

11

They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code.

## 1. Administrative Expenses

Administrative Expenses are costs or expenses of administering the Chapter 11 case that are allowed under Section 507(a)(2). The holders of Administrative Expenses shall receive cash on account and in the amount of such Administrative Expenses. At the option of the Debtor, payment of Allowed Administrative Expenses shall be made in cash: (a) on or before the Effective Date; or (b) when due in accordance with the terms of any agreement between the Debtor and the holder of the Administrative Claim. Professionals employed at the expense of the Estate and entities who may be entitled to reimbursement or the allowance of fees and expenses from the Estate pursuant to Section 503(b)(2)-(6) shall receive cash in the amount awarded to such professionals and entities at such times and only in accordance with a Final Order entered pursuant to Sections 330 or 503(b)(2)-(6).

Any application for payment of an Administrative Expense shall be filed within 14 days after the Effective Date (the "**Administrative Expenses Bar Date**"), or shall be forever barred.

The Administrative Expenses include, but may not be limited to, approved fees and costs of estate professionals Allowed Administrative Expense Claims for FSA and Gordon Foods, in the amounts of $91,729.10 and $18,986.14, respectively, and fees and charges assessed against the estate pursuant to 28 U.S.C. §1930.

The Administrative Expenses also include a post-petition loan made under Section 364(b) in the amount of $350,000 from Richard and Lynn MacMillan to the Debtor [DE 8]. The Debtor requested permission to incur the debt by motion with the Court (the "**MacMillan DIP Motion**") at the outset of the Case. The Court has not yet ruled on the MacMillan DIP Motion.

12

Post-confirmation, the Plan Trustee and its counsel will continue to incur fees, and it is anticipated an accountant will be employed and will incur fees and costs together with such other professional and other expenses incurred by the Plan Trustee in connection with the administration of the ACI Recovery Fund.

### 2. Priority Tax Claims

As provided by Section 1129(a)(9)(C), allowed priority tax claims under Section 507(a)(8) shall be paid in accordance with the negotiations of the parties, in cash with interest at the statutory rate from the Petition Date. The Debtor will pay all Claimants holding a Priority Tax Claim in full from the ACI Recovery Fund. The Debtor shall tender payment to any holder of an allowed priority tax claim within 60 days after the Effective Date.

### B. Classified Claims

**Class 1 – Secured Prepetition Claim of LCX**

Class 1 consists of the Allowed Claim of LCX for prepetition amounts owed, which Claim is secured by all pre-petition assets and post-petition accounts, shall remain secured after the Effective Date in the same priority as it was on the Petition Date. According to recent availability certificates, the amount of the prepetition Claim is approximately $787,666.75.

The Class 1 claim will be paid in full from the proceeds of the sale of the Debtor's assets, or from collection of factored receivables.

- Class 1 is unimpaired.

**Class 2 – Secured Claim of Alliance Bank of Arizona**

Class 2 consists of the Allowed Secured Claim of Alliance Bank of Arizona ("**Alliance**"), secured by a certificate of deposit in the amount of $100,000. The Allowed Class 2 Claim shall be secured to the extent of the certificate of deposit. According to the

filed Proof of Claim (Claim 12) by Alliance, the amount of the Claim is at least $102,866.13.

The Class 2 secured claim shall be paid in full by offsetting the secured claim against the certificate of deposit.

- Class 2 is unimpaired.

**Class 3 – PACA Claim of Triple B Corporation, d/b/a Charlie's Produce**

Class 3 consists of the Allowed PACA Claim of Charlie's Produce. Class 3 Claimants will be paid pursuant the stipulations the Debtor entered into with them.

- Class 3 is impaired.

**Class 4 – PACA Claim of PJK Food Service d/b/a Keany Produce and Gourmet**

Class 4 consists of the Allowed PACA Claim of Keany Produce. Class 4 Claimants will be paid pursuant the stipulations the Debtor entered into with them.

- Class 4 is impaired.

**Class 5 – Administrative Convenience Class**

Class 5 consists of all Allowed General Unsecured Claims that (i) are $2,500.00 or less, or (ii) the holders of which elect to reduce their General Unsecured Claims to $2,500.00. Each holder of an Allowed Class 5 claim shall receive payment in full from the ACI Recovery Fund. The estimated return to holders of Class 5 Claims is 100% of Allowed Claims.

The Administrative Convenience Payments shall be made from the ACI Recovery Fund. Payments to holders of Allowed Class 5 claims shall be made on or before the later of (i) the first business day that is 90 days after the Effective Date, or (ii) upon allowance of the Class 5 holder's Claim. All holders of Allowed Class 5 Claims are entitled to vote on the Plan.

- Class 5 is impaired

**Class 6 – Non-Insider General Unsecured Claims**

14

Class 6 consists of all Allowed Claims held by non-insiders that are not secured and do not have statutory priority. Class 6 consists primarily of trade creditors, unliquidated and contingent claims of former employees, and an unliquidated and contingent claim of the United States Bureau of Land Management. The total amount of scheduled non-insider unsecured claims is approximately $1,472,700.21.

Holders of Allowed Class 6 Claims shall be paid Pro Rata from the ACI Recovery Fund in quarterly payments. The amount of such payments shall be determined by the Plan Trustee. The Debtor expects to make distiributions to unsecured creditors in full account of their Claim from the ACI Recovery Fund. The timing and amount of the distribution depends on the amount and payment of the contingent, unliquidated Claims. The Debtor will segregate an amount of funds to satisfy the contingent, unliquidated Claims when the amounts are known, and distribute the remaining amounts Pro Rata to Creditors holding Allowed Unsecured Claims. The estimated return to holders of Class 6 Claims is 100% of Allowed Claims, but may be less depending on a number of factors.

- Class 6 is impaired.

**Class 7 – Insider Unsecured Claims**

Class 7 consists of all Allowed unsecured Claims of insiders. The total amount of scheduled insider unsecured claims is approximately $2,445,697. Each holder of an Allowed Class 7 claim shall receive a Pro Rata distribution of the ACI Recovery Fund following payments in full to Classes 5 and 6. It is difficult to estimate a return to holders of Class 7 Claims because it depends in part on post-confirmation professional fees, distributions to Claims of disputed, contingent, or unliquidated Claims, and whether Class 6 Claimants elect to reduce their Claims to $2,500.00 to be treated as Class 5 Claimants.

- Class 7 is impaired.

**Class 8 – Equity Interests**

15

Class 8 consists of all Allowed Interests in Debtor as of the petition date. Holders of Allowed Interests will receive payment on account of their pre-petition ownership interest in Debtor only if all other classes have been paid in full.

- Class 8 is impaired.

## IV. EXECUTORY CONTRACTS AND UNEXPIRED LEASES

All executory contracts and unexpired leases shall be assumed by the Debtor unless otherwise rejected.

Any individual or entity that is a party to an executory contract or unexpired lease assumed pursuant to the Plan who objects to such assumption must file with the Court a written statement stating the basis for the objection. This statement must be filed and served within the deadline for objecting to the confirmation of the Plan, unless the Court has set an earlier time. Any individual or entity that fails to file timely and serve such a statement will be deemed to have waived any objection to the proposed assumption.

## V. MEANS FOR EXECUTING AND IMPLEMENTING THE PLAN

### A. The ACI Plan Trust

Upon confirmation, a trust shall be formed to liquidate the remaining assets and claims of the Debtor and to distribute such assets in accordance with this Plan. The Trust shall be managed by the Plan Trustee.

All prepetition and post-petition Claims and Interests shall attach to the Plan Trust, to be satisfied solely in accordance with this Plan. The Debtor shall continue in existence post-confirmation, and Claims or Interests treated in this plan shall not attach to the Debtor post-confirmation.

### B. Means of Funding the Plan

The Debtor will sell substantially all of its assets. The proceeds from the sale and from the accounts receivable remaining after LCX is paid in full under the loan documents

16

approved under the DIP Order will go into the ACI Recovery Fund. There are also causes of action, including preference actions, which may lead to recoveries for the ACI Recovery Fund. The Debtor will make distributions out of the ACI Recovery Fund in the order of priority set forth in this Plan.

C.    <u>Causes of Action</u>

Pursuant to Section 1123(b)(3), the Debtor shall retain all of the Debtor's Causes of Action, including any avoidance causes of action relating to or in connection with payments made or transfers to insiders or affiliates of the Debtor and violations of the automatic stay.

Other than chapter 5 avoidance actions, the Debtor is currently unaware of any causes of action of value to the Estate. The Plan Trustee shall become the authorized representative of the Estate, which shall retain all claims, rights or causes of actions, suits, and proceedings, whether in law or in equity, whether known or unknown, that the Debtor or the Estate may hold against any person or entity. The Plan Trustee may pursue such retained Litigation Claims, as appropriate, in accordance with the best interests of creditors and the ACI Plan Trust.

Although the Debtor does not expect that the Plan Trustee will have viable chapter 5 causes of action, there were payments made in the preference period to the following parties:

LCX - $4,392,255.03
Sockeye $16,888.50
ComQuest - $50,235.70
AT&T Mobility – 9,954.99
Alaska Communication Systems - $17,739.39
Pepsi Beverages Company – $151,989.13
Beacon OHSS - $18,988.50
Frontier Paper WCP – $7,233.06
Fairchild Freight, LLC - $90,645.65
Marsh & McLennan Agency, LLC - $72,363.00
Food Services of America - $548,026.35

17

Country Foods - $22,010.14
Premera Blue Cross Blue Shield - $22,574.38
Charlie's Produce - $21,597.01
Gordon Food Service - $90,196.77
Stallion Rockies, Ltd. - $19,670.12
Veritiv Operating Company - $20,540.24
Ultimate Software Group - $889,851.48
Keany Produce - $6,452.60
Personnel Plus - $20,836.56
Alliance Bank CC - $98,759.22
Catalyst Ventures - $34,738.74
AFCO - $20,668.24
Aetna - $9,526.18
BINDOLABSINC - $7,835.96
Bank of America - $16,933.85
Colonial Life - $25,955.49
Ducey & Associates, LLC - $33,116.93
Global Services, Inc.- $26,955.89
Issac D. Zorrea, Esq. - $6,650.00
John Hancock - $95,786.27
Lorelei Gonzales - $21,192.50
Losada & Losada - $31,343.75
MetLife - $13,835.13
New Central Market - $7,868.67
Paragon Properties, Inc. - $7,650.00
Turnkey Housing Solutions - $7,825.00

The Plan Trustee will investigate these payments and prosecute or settle any valuable claims.

D.    Management

On the Effective Date, David Gonzales, current CEO of the Debtor, shall begin serving as the Plan Trustee and shall oversee the liquidation and distribution of assets in accordance with the terms of the Plan. The Plan Trustee will operate free of bankruptcy restrictions and will be able to enter into and terminate contracts, purchase and sell assets, pay and incur debts, and proceed with other business operations, both within and outside the ordinary course, without Court authorization except as expressly required by the Plan

18

or the Confirmation Order. The Plan Trustee will be paid in the ordinary course of business with ordinary hourly rate of $500, billed on a monthly basis, and without Bankruptcy Court oversight.

The Plan Trustee will be authorized to employ legal and accounting professionals employed by the Debtor pre-confirmation, as well as such other professionals as may be approved by the Bankruptcy Court including, without limitation, employment of professionals on a contingent fee basis for the purpose of prosecuting causes of action transferred to the Trust, although this is not expected to occur. Such professionals will be compensated according to their standard terms separate and apart from the Debtor's compensation.

E.  <u>Objections to Claims and Interests</u>

At any time before the expiration of sixty (60) days after the Effective Date, the Plan Trustee or any other party in interest may object to any Claim on any grounds permitted by the Bankruptcy Code. All objections to Claims must be brought by filing the appropriate pleading in the Bankruptcy Court before the first Business Day that is 60 days after the Effective Date, but the Bankruptcy Court may approve a later date on Reorganized Debtor's motion filed (but not necessarily heard) before the first Business Day that is 60 days after the Effective Date. Any Claim that was not scheduled and for which no Proof of Claim was filed will be disallowed.

Except in regards to Administrative Expenses, objections to Claims and Interests shall be filed and served upon the holder of such Claim or Interest no later than the Claims Objection Bar Date.

There shall be no distribution to the holder of a Disputed Claim until the Objection to the Claim has been resolved by a Final Order of the Bankruptcy Court and the Claim has become an Allowed Claim. Payments and distributions on account of each Disputed

Case 2:18-bk-13118-EPB    Doc 175    Filed 04/23/19    Entered 04/23/19 19:30:47    Desc
Main Document    Page 19 of 30

Claim that is Allowed shall be made in accordance with the provisions of the Plan relating to the class of creditors to which the holder belongs.

F.    Tax Compliance

The Debtor will comply with all tax withholding and reporting requirements, including with regard to all distributions and receipts pursuant to this Plan, as applicable. All holders of Allowed Claims and Interests shall have sole responsibility for any tax obligation imposed by any governmental unit pursuant to a distribution received under the Plan.

G.    Vesting

Except as provided for in the Plan or Confirmation Order, on the Effective Date, the Plan Trustee shall be vested with the remaining property or assets of the Estate, free and clear of all claims, liens, charges, and other interests of creditors arising prior to the filing date, except as provided by the Plan, to be liquidated in the ordinary course of business.

VI.    DISTRIBUTIONS UNDER THE PLAN

A.    Manner of and Distribution of Payments

All distributions will be made in the form of cash payments and checks to entities holding Allowed Claims at the addresses listed on the Proof of Claim filed by such entity, as the address where payments are to be sent, or at the last known address of such holder if no proof of Claim is filed, unless other instructions are received in writing by the Plan Trustee.

If any holder's distribution is returned as undeliverable, no further distribution to such holder will be made unless and until the Plan Trustee is notified of such holder's then-current address, at which time all missed distributions will be made to such holder without interest.  The Plan Trustee will be under no obligation to attempt to locate the holder of any Allowed Claim.

20

Distributions that are not claimed, including, but not limited to, checks not negotiated, by the later of the expiration of 180 days from the Effective Date or ninety days after the date of an attempted distribution shall be deemed to be unclaimed property under Section 347(b) and shall vest or revest in the Plan Trust, and the Claims with respect to which those distributions are made shall be automatically cancelled. After the expiration of that period, the claim of any Person to those Distributions shall be discharged and forever barred. All funds or other property that vest or revest in the Plan Trust pursuant to this paragraph shall be distributed by the Plan Trustee to the other holders of Allowed Claims in accordance with the provisions of the Plan.

B.     No Distributions to Holders of Disputed Claims

No payments or distributions of any kind will be made on account of any claim listed as disputed, contingent, or unliquidated, until such claim becomes an Allowed Claim, and only to the extent such claim is Allowed. The Debtor anticipates objections to claims will be filed.

C.     Post-Petition Interest, Fees, and Costs

Interest on and fees and expenses, if any, with respect to any Allowed Secured Claim, including but not limited to unpaid professional fees due the holders of such Claims, shall be paid only to the extent permitted by Section 506(b) from the proceeds of the Collateral securing such Claims. Allowance thereof shall be determined separately for each Class and each subclass. Any interest, fees and expenses paid during the pendency of these Cases to the holder of any Allowed Secured Claim that are not allowable pursuant to Section 506(b) shall be credited against and shall reduce the principal amount of any such Allowed Secured Claim.

Except as otherwise provided in the Plan, or in an order of the Bankruptcy Court, no holder of an Allowed Claim shall be entitled to the accrual of post-petition interest or

21

the payment by the Debtor of post-petition interest or professional fees on account of such Claim for any purpose.

## VII.   EFFECT OF PLAN ON CLAIMS

### A.   Effect of Confirmation

Except for continuing liens, claims, rights, and interests of a Secured Creditor against Collateral as provided for in the Plan, or in the Confirmation Order, the confirmation of the Plan is a discharge, on the Effective Date, of any and all debts of the Debtor that arose at any time prior to confirmation, including, but not limited to, all principal and all interest accrued thereon, pursuant to Section 1141.  Such discharge shall be effective as to each Claim, regardless of whether a proof of claim thereof was filed, whether the Claim is an Allowed Claim or whether the holder thereof votes to accept the Plan.

Holders of Claims against the Debtor may not receive any payment or distribution except as otherwise provided for in the Plan, and may not seek any recourse against the Debtor or its assets except as provided for in the Plan.  After the Confirmation Date, all holders of Claims will be forever enjoined from taking any action against the Debtor or its property on account of such claim; including the commencement or continuation of any proceeding; enforcing any judgment or award; creating, perfecting, or enforcing any lien; or any other action inconsistent with the terms of the Plan.

The Plan Trustee will move the Court to close the case once the Plan has been substantially consummated.  Until substantial consummation, the Plan Trustee will be responsible for filing pre- and post-confirmation reports required by the United States Trustee and paying the quarterly post-confirmation fees of the United States Trustee. Alternatively, the Court may enter a final decree closing the case on its own motion.

### B.   Plan Trustee's Authority to Compromise and Settle

Case 2:18-bk-13118-EPB    Doc 175    Filed 04/23/19    Entered 04/23/19 19:30:47    Desc
Main Document    Page 22 of 30

The Plan Trustee may compromise or settle any Claim or Interest, or any cause of action against the Debtor or brought by the Debtor without notice and a hearing.

### C.    Right of Setoff

The Debtor may set off against any payment or distribution made pursuant to an Allowed Claim a claim of any kind that it may have against the holder of such an Allowed Claim, but the Debtor will not be required to do so. The failure to utilize the right of setoff does not constitute a waiver or release of any claim the Debtor has against a holder of an Allowed Claim.

## VIII.  OTHER PROVISIONS

### A.    Binding Effect

The Plan shall be binding on and inure to the benefit of the Debtor, all present and former holders of Claims against and Interests in the Debtor, their respective successors and assigns, including, but not limited to, the Debtor, all other parties-in-interest in these Chapter 11 Cases, and the Plan Trustee.

### B.    Revocation, Withdrawal, or Non-Consummation

The Debtor reserves the right to revoke or withdraw the Plan at any time prior to the Confirmation Date and to file subsequent plans of reorganization. If the Debtor revokes or withdraws the Plan, or if Confirmation or Consummation does not occur, then (i) the Plan shall be null and void in all respects, (ii) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain any Claim or Class of Claims), assumption or rejection of executory contracts or leases effected by the Plan, and any document or agreement executed pursuant to the Plan shall be deemed null and void, and (iii) nothing contained in the Plan, and no acts taken in preparation for consummation of the Plan, shall (a) constitute or be deemed to constitute a waiver or release of any Claims by or against, or any Interest in, the Debtor or any other person, (b)

23

prejudice in any manner the rights of the Debtor or any person in any further proceedings involving the Debtor, or (c) constitute an admission of any sort by the Debtor or any other person.

### C. Plan Modification

The Plan may be corrected or modified, prior or subsequent to Confirmation, or prior to consummation, after notice to interested parties and by Court order as provided by law. The Debtor further retains all rights to modify the Plan prior to Confirmation as permitted by Section 1127. The Plan may be amended or modified prior to Confirmation without leave of Court, so long as notice is provided to Creditors. After Confirmation and with approval of the Court and upon notice to creditors, the Plan Trustee may remedy any defect or omission, or may reconcile any inconsistencies in the Plan or Confirmation Order, so long as such modification does not materially alter or adversely affect the interests of Creditors, to the extent it may be necessary to carry out the purposes and intent of the Plan.

### D. Severability of Plan Provisions

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of the Plan Trustee, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each

24

term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### E.    Plan Supplement

Any and all exhibits, lists, or schedules not filed with the Plan shall be contained in the Plan Supplement and filed with the Clerk of the Bankruptcy Court at least five (5) Business Days prior to date of the commencement of the Confirmation Hearing.  Upon its filing with the Bankruptcy Court, the Plan Supplement may be inspected in the office of the Clerk of the Bankruptcy Court during normal court hours.  Holders of Claims or Interests may obtain a copy of the Plan Supplement upon written request to the Debtor.

### F.    Indemnification Obligations

Except as otherwise specifically limited in this Plan, any obligations or rights of the Debtor to indemnify those individuals who have served as directors, officers, or employees at any time during the Chapter 11 Case pursuant to such Debtor's articles of organization, by-laws, policy of providing employee indemnification, applicable state law, or specific agreement in respect of any claims, demands, suits, causes of action, or proceedings against such directors, officers, or employees based upon any post-petition act or omission in connection with, relating to, or arising out of, the Chapter 11 Case, the sale of the Debtor's assets, the solicitation of acceptances of the Plan, the pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Estate or of the Plan or the property to be distributed under the Plan, or pursuant to any indemnification obligation that is entitled to priority as an expense of administration for any reason, shall survive and remain an Administrative Claim against the Estate.

### G.    Consequences of Default

If the Debtor is unable to perform the terms and conditions of this Plan, it will be in default.  The agreements held by the secured creditors LCX, Alliance and McMillans, and

the Plan itself creates legal and enforceable obligations and provide valuable rights and remedies in the event of a default.

### H.  Post-Confirmation

Upon and after the Confirmation Date, the Plan Trustee shall take such action as is necessary to effectuate this Plan.

### I.  Non-allowance of Penalties or Fines

Except as authorized expressly by Final Order of the Bankruptcy Court, no portion of an Allowed Claim shall include, and no distribution shall be made on account of, any fine, penalty, exemplary or punitive damages, late charges or other monetary charge relating to or arising from any default or breach by the Debtor.  Any Claim for such amount shall be deemed to be a Disputed Claim regardless of whether an objection is filed.

### J.  Post-Confirmation Employment of Professionals

After the Effective Date, the Plan Trustee shall have the right to employ professionals, including attorneys, accountants, and other advisors, free of any restrictions imposed by the Bankruptcy Code or Rules.  Fees and costs may be paid for post-confirmation services upon approval of the Plan Trustee alone; no Bankruptcy Court approval shall be required.

### K.  Payment of Statutory Fees

All fees payable pursuant to 28 U.S.C. § 1930, as determined by the Bankruptcy Court at the Confirmation shall be paid on or before the Effective Date.  The Debtor shall continue to accrue and pay fees pursuant to 28 U.S.C. § 1930 until the Case is closed, dismissed, or converted.

26

L.    Documentation of Plan Implementation

In the event any entity that possesses an Allowed Secured Claim or any other lien against any of the Debtor's Property for which the Plan requires the execution of any documents to incorporate the terms of the Plan, fails to provide a release of its lien or execute the necessary documents to satisfy the requirements of the Plan, the Plan Trustee may record a copy of this Plan or the Confirmation Order with the appropriate governmental agency and such recordation shall constitute the lien release and creation of any necessary and new liens to satisfy the terms of the Plan.  For any Creditor asserting a secured interest in any Property of the Debtor, for which no equity exists in the property for the benefit of the Creditor, the Creditor shall immediately upon the Effective Date of the Plan release its asserted secured interest in the Property.  If the Plan Trustee deems advisable, he may obtain a further Order from the Court that may be recorded in order to implement the terms of the Plan.

M.    Notices

Except as provided otherwise herein, any notice, request, or demand required or permitted to be made or provided to or upon the Debtor or the Plan Trustee under the Plan shall be (i) in writing; (ii) served by (a) certified mail, return receipt requested, (b) hand delivery, (c) overnight delivery service, (d) first class mail, or (e) facsimile transmission; and (iii) deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received by the Debtor or the Plan Trustee and telephonically confirmed.

N.    Terms of Injunctions or Stays

Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays provided for in the Chapter 11 Cases under Sections 105 or 362 of the Bankruptcy Code or otherwise, and extant on the Confirmation Date (excluding any injunctions or

27

stays contained in this Plan or the Confirmation Order), shall remain in full force and effect until the Effective Date.

Except as otherwise expressly provided in the Plan or the Confirmation Order, all entities who have held, hold or may hold Claims against, or Interests in, the Debtor will be permanently enjoined, on and after the Effective Date, from (i) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against the Debtor's property of the Estate or the proceeds of such property, including without limitation property transferred to RCC (except with respect to liabilities expressly assumed by the Buyer), on account of any such Claim or Interest, (ii) creating, perfecting or enforcing any encumbrance of any kind against the property or interest in such property while it remains in the Estate, on account of any such Claim or Interest, and (iii) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due to the Debtor or against the property or interests in property of the Debtor on account of any such Claim or Interest except to the extent the Claim is a Setoff Claim.

### O.    Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) the laws of (i) the State of Arizona shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan and (ii) the laws of the state of incorporation of the Debtor shall govern corporate governance matters with respect to the Debtor, in either case without giving effect to the principles of conflicts of law thereof.

## IX.    RETENTION OF JURISDICTION

Notwithstanding confirmation or the Effective Date having occurred, the Court will retain and have full jurisdiction as is allowed under Title 28 of the United States Code, the

28

Bankruptcy Code, or other applicable law to enforce the provisions, purposes, and intent of the Plan, including, without limitation, any proceedings which relate to:

1.     Determination of the allowability, classification, or priority of claims and interests;

2.     Construing, implementing, enforcing, executing or consummating the Plan, the confirmation order or any other order of the Court, any document attached as an exhibit to the Plan or contemplated by the Plan, or any other matter referred to in the Plan;

3.     Determination of all matters that are pending before the Court in the Chapter 11 Cases prior to the Effective Date or that may arise after the Effective Date;

4.     Determination of any and all applications for allowance or requests for payment of administrative claims, including, without limitation, requests for allowance and payment of compensation and expense reimbursement of professional persons;

5.     Determination of motions for the rejection, assumption or assignment of executory contracts or unexpired leases, and determination of the allowance of any claims resulting from the rejection of executory contracts and unexpired leases;

6.     Determination of all applications, motions, adversary proceedings, contested matters, and any other litigated matters instituted prior to the closing of the Chapter 11 Case;

7.     Modification of the Plan pursuant to Section 1127, prior to the Effective Date, remedy of any defect or omission in the Plan or confirmation order, reconciliation of any inconsistency within the Plan and the loan documents, so as to carry out the intent and purpose of the loan documents;

8.     Issuance of injunctions or taking such other actions or making such other orders as may be necessary or appropriate to restrain interference with the Debtor by any party with the Plan or its execution or implementation by any person;

29

Case 2:18-bk-13118-EPB   Doc 175   Filed 04/23/19   Entered 04/23/19 19:30:47   Desc
Main Document   Page 29 of 30

9. Issuance of such orders in aid of consummation of the Plan and the confirmation order, notwithstanding any otherwise applicable non-bankruptcy law, with respect to any person, to the full extent authorized by the Bankruptcy Code;

10. Ordering the assumption or rejection of executory contracts or leases to which the Debtor is a party, which has not been previously resolved;

11. Any determination necessary or appropriate under Section 505 of the Bankruptcy Code or any other determination relating to priority tax claims, taxes, tax refunds, tax attributes, and tax benefits affecting the Debtor, its estate, or the Property through the end of the fiscal year in which the Effective Date occurs;

12. Entry of a final decree closing the Chapter 11 case;

13. Determination of such other matters and for such other purposes as may be provided in the confirmation order.

## X. REQUEST FOR CONFIRMATION AND RECOMMENDATION

The Debtor believes confirmation of this Plan is the best alternative and will provide all holders of Allowed Claims with full recovery. Accordingly, the Debtor recommends that holders of Impaired Claims vote to accept the Plan and return the Ballots as directed in the Plan and Disclosure Statement. The Debtor requests confirmation of the Plan pursuant to Section 1129(b) with respect to any impaired Class that does not accept the Plan.

DATED this 23rd day of April, 2019.

**CHAPTER 11 DEBTOR**

By /s/ David Gonzales
David Gonzales

**MAY, POTENZA, BARAN & GILLESPIE, P.C.**

By /s/ Grant L. Cartwright
Grant L. Cartwright
Andrew A. Harnisch
*Attorneys for Chapter 11 Debtor*
30